MARÍA PONTÓN RAMOS y LUIS SANTIAGO RIVERA, demandantes y apelados, *v.* SUCESORES DE HUERTAS GONZÁLEZ, demandada y apelante.

No. 5092.—*Sometido:* Mayo 2, 1930. *Resuelto:* Julio 8, 1931.

*José C. Jusino,* abogado de la apelante; *José Martínez Dávila* y *F. Rodríguez Alverio,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

María Pontón Ramos y su esposo Luis Santiago Rivera demandaron a la mercantil de Toa Alta Sucesores de Huertas González pidiendo a la corte que decretara la nulidad de cierto procedimiento ejecutivo hipotecario seguido por la demandada contra los demandantes y condenara a la demandada a pagar a los demandantes veinte mil dólares por daños y perjuicios y las costas del pleito.

Excepcionó y contestó la demanda la demandada. Admi-

tió ciertos hechos y negó otros y estableció varias reconvenciones.

Fué el pleito a juicio. Practicóse una larga prueba documental y testifical, y la corte finalmente dictó sentencia declarando la nulidad pedida y ordenando la devolución de la propiedad ejecutada con sus frutos y rentas, y si ello no fuere posible la entrega de su valor y del de los daños materiales sufridos hasta la suma de $7,500. Condenó además la corte a la demandada a pagar a los demandantes $4,500 como indemnización por los dolores morales producidos por la angustia y sufrimientos mentales tenidos por los demandantes con motivo de la ejecución de su finca por la demandada. Decidiendo sobre las reconvenciones, decretó que quedara subsistente el préstamo con garantía hipotecaria por $4,500, más sus intereses al tipo establecido desde el 20 de junio de 1927, y los $500 fijados para costas en caso de ejecución. El pago de las costas del pleito lo impuso la corte a la demandada.

No conforme ésta estableció el presente recurso de apelación, señalando en su alegato la comisión de trece errores que argumenta extensamente.

Los cuatro primeros se refieren a cuestiones previas, alegándose que fueron cometidos por la corte, el primero al declarar sin lugar una moción eliminatoria, el segundo al desestimar la excepción previa de falta de causa de acción, el tercero al negarse a suspender la vista y el cuarto al negarse a eliminar ciertos particulares de la excepción previa y contestación a la reconvención.

En cuanto al primero bastará decir que quizá tuvo en algo razón la demandada al solicitar la eliminación de ciertos particulares de la demanda, pero no habiéndose demostrado perjuicio, el error, de haberse cometido, no lleva consigo la revocación de la sentencia.

Para fundar el segundo dice la apelante que "el derecho que asiste a la demandante, declarada la nulidad de dicho

procedimiento, está claramente determinado en nuestro Código Civil," y agrega que siendo ello así, la demandante ha debido ejercitar la acción reivindicatoria, y que no conteniendo su demanda las alegaciones necesarias para reivindicar, no aduce hechos suficientes para determinar una causa de acción. Y a esto contesta, con razón a nuestro juicio, la parte apelada, en su alegato:

"No es ni puede ser la presente una acción reivindicatoria. Es simplemente una acción para obtener daños y perjuicios basados en la nulidad de ciertas actuaciones; en la falsedad maliciosa de ciertas alegaciones del escrito inicial y en la certeza y cuantía de la deuda reclamada, así como el vencimiento de la misma. (Arts. 169 y 175 del Reglamento para la ejecución de la Ley Hipotecaria.)"

■ Tendríamos que extendernos demasiado para narrar todos los detalles referentes a la petición de suspensión del juicio. Bastará decir que no aparece que la corte abusara de su poder discrecional y que el juicio mismo demostró que la parte demandada se encontraba preparada para entrar en él sin que se le causara perjuicio alguno. No existe el error.

Para concluir que tampoco existe el error cuarto, bastará repetir lo que dijimos al referirnos al primero.

Los señalamientos quinto y sexto se refieren a errores con motivo de la práctica de la prueba.

■ Se sostiene por el quinto que la corte erró al permitir que se presentaran como prueba todos los autos del procedimiento ejecutivo cuya nulidad se pide y no determinadas constancias del mismo. Es mejor práctica la presentación específica de determinadas constancias, pero en un caso como éste quizá quedaba colocada la corte en mejores condiciones para actuar pudiendo entrar en el examen de la totalidad de los autos. No hubo error en la admisión.

Tampoco puede considerarse como error capaz de producir la revocación de la sentencia el sexto que se formula así: "La corte erró al admitir prueba referente a las condiciones del contrato de hipoteca, fuera del contrato mismo."

A primera vista parece serio. Pero se va al récord y se encuentra que lo ocurrido fué que al declarar como testigo el demandante Luis Santiago, se le preguntó "¿Usted recuerda los términos de ese contrato? ¿Cuáles eran sus obligaciones con ese contrato?" Y, no obstante la objeción de la demandada, se le permitió contestar: "Pagar los intereses anualmente." Insistió la demandada, y la corte dijo:

"Juez: Ya el compañero ha explicado. La Ley de Evidencia no puede ser de tal manera estricta que no permita a la parte hacer esas preguntas; la parte debe tener cierta elasticidad, y ya el testigo ha dicho que se obligaba a pagar los intereses anualmente. Claro que la corte no permitiría una cláusula que no estuviera en el contrato, no sería admisible."

Y contestó la demandada por su abogado:

"Dda.: Lo hacíamos con el objeto de que no se llene el récord con cosas innecesarias."

Los señalamientos séptimo y octavo van a los méritos del caso. Sostiene en ellos la apelante que la corte sentenciadora erró al declarar probado que los intereses de la hipoteca correspondientes al año 1926-1927 estaban pagados a la fecha de la ejecución, y al declarar que la notificación del requerimiento de pago en un procedimiento ejecutivo hipotecario no puede hacerla una persona particular.

A fin de entender bien las cuestiones planteadas, se hace necesario narrar lo esencial de los hechos envueltos.

Los demandantes, dueños de una finca de 73 cuerdas, tomaron a préstamo a la demandada la suma de $4,500 y para garantizarla, con más $500 para intereses, gastos y costas en caso de ejecución, hipotecaron la finca por escritura pública otorgada en Comerío el 20 de agosto de 1924.

En diciembre de 1927 la demandada solicitó en la Corte de Distrito de San Juan la ejecución de la hipoteca, alegando que los intereses no estaban satisfechos desde el día 30 de junio de 1925 y que la deuda estaba vencida, pidiendo que se dictara orden para que se requiriera a los deudores a fin de que

dentro del término de treinta días hicieran efectiva la deuda, con los apercibimientos de ley. Expidió el secretario el oportuno mandamiento, que fué cumplimentado por Ramón Coto, persona que no era el márshal. Transcurrido el plazo de ley sin que el pago se verificara, se dictó orden de remate, adjudicándose en el celebrado la finca a la demandada.

Los demandantes sostuvieron que el procedimiento hipotecario era nulo por varios motivos. Nos limitaremos a mencionar los que consideró suficientes la corte de distrito para decretar la nulidad. Fueron dos. Refiriéndose al primero, dice la corte en su relación del caso y opinión:

"Se pide la 'nulidad del ejecutivo hipotecario, porque en el escrito inicial se hacen alegaciones falsas que afectan al vencimiento del préstamo y cuantía de la deuda, por lo que la Corte careció de jurisdicción en el asunto por causa de la materia de acción.' Necesariamente tenemos que recurrir, para discutir este fundamento de nulidad, a los autos originales de la causa número 5759, Sucrs. de Huertas González vs. María Pontón Ramos y Luis Santiago Rivera, sobre ejecución hipotecaria, que fueron ofrecidos en su totalidad por la parte demandante, (Exhibit 'A'). En el hecho cuarto de la demanda se dijo textualmente:

" 'Cuarto: Se convino y consta así inscrito en el Registro de la Propiedad, que el no pago de los intereses estipulados con toda puntualidad o el no pago de uno cualquiera de los plazos anuales de mil doscientos cincuenta dollars convenidos, daría lugar a que los acreedores dieran por vencida la hipoteca en su totalidad y proceder a ejecutarla en la forma ordinaria establecida por la Ley, Art. 128, 129 y 130 de la Ley.'

"Examinando la escritura que consta unida a los autos de este expediente, aparece realmente que no fué esto lo convenido entre las partes al otorgar dicho documento. No consta la estipulación de declarar vencida toda la deuda, por el no pago de uno cualquiera de los plazos anuales convenidos, aunque sí se convino que el no pago de los intereses, daría por vencida la hipoteca y los acreedores podían proceder a la ejecución de la misma. Achaca malicia y mala fe la parte demandante a la demandada por haber hecho estas alegaciones, y para ello insiste en que de la alegación quinta de la demanda se desprende de nuevo que los demandantes dieron por vencido el primer plazo del capital y los intereses co-

rrespondientes respectivamente al 30 de junio del año 1925 y al 30 de junio de 1926 por no estar satisfechos en todo ni en parte. Sin embargo, la prueba que desfiló ante la corte nos dice otra cosa. La propia prueba de la demandada, dice que los intereses fueron satisfechos hasta 1926, cosa que está en abierta contradicción con las alegaciones que se hacen en el hecho quinto de la demanda en ejecución. En cuanto al pago de los intereses de la hipoteca de 1927, también se probó a satisfacción de la Corte, (Exhibit 'B' y 'C') que los demandantes pagaron los intereses hasta el año 1927.

"De suerte que esto no puede considerarse, como alega la parte como un error inmaterial que en nada afecta al procedimiento hipotecario ni a los intereses de los ejecutados, sino que realmente es un error grave, toda vez que consiste en la exposición de hechos falsos e inexistentes a la fecha en que se radicó la demanda en ejecución. Esta se radicó en diciembre 23 de 1927, esto es, en una fecha en que todavía no estaba vencido el préstamo garantizado por la hipoteca. El capital de $4,500 había de pagarse a razón de $1,250 anuales, empezando el pago el día 20 de junio de 1925; claramente el último plazo vencía el 20 de junio de 1928. Esto es, seis meses después de presentarse la demanda en ejecución. . . No es como dice la parte demandada, que vencido uno de los plazos del capital, puede considerarse vencida toda la deuda. Si esta estipulación no figuró en la escritura, como realmente no figuró, el acreedor hipotecario no podía variar los términos y condiciones de la misma y declarar vencida la hipoteca en el tiempo y forma que le viniera en ganas, sino solamente cuando las condiciones del contrato no fueran cumplidas por los acreedores."

Y estudiando el segundo expone:

"Otro fundamento de nulidad que alegan los demandantes es que el requerimiento no fué practicado por la persona designada por la Corte, careciendo ésta, por lo tanto, de jurisdicción sobre los demandados. Efectivamente, aparece en los autos del caso #5759 de esta Corte de Distrito, una orden firmada por el Juez Berga, en la que manifiesta que vista la demanda presentada sobre ejecución de hipoteca y los documentos que a la misma se acompañan, y apareciendo que se han cumplido los requisitos y solemnidades que dispone la Ley Hipotecaria y su Reglamento, la corte decreta y ordena que se requiera a los demandados para que dentro de 30 días a contar de la fecha en que se les notifique del requerimiento, satisfagan al demandante la cantidad reclamada en la ejecución, aper-

cibiéndoles que de no hacerlo así, se venderán en pública subasta los bienes hipotecados; y concluye su orden el Juez con lo siguiente: 'librándose al efecto mandamiento al márshal para el cumplimiento de lo ordenado.' De los mismos autos aparece que el requerimiento no ha sido dirigido al márshal para que cumpla la orden de la Corte, sino que se omitió esta parte de la orden del juez, y, así el requerimiento está diligenciado por un tal Ramón Cotto, apareciendo como testigo Juan E. Ademas, P. I.

"Convenimos con la parte demandada en que el requerimiento no va dirigido al márshal, sino al deudor; pero no podemos convenir con él en que este requerimiento específico que determina el artículo 128 de la Ley Hipotecaria puede ser hecho de acuerdo con el artículo 92 del Código de Enjuiciamiento Civil. Se confunde por la demandada la disposición que contiene el artículo 168 del Reglamento para la ejecución de la Ley Hipotecaria, que es concordante con el 228 de la misma, con los requerimientos preliminares a una demanda ordinaria. Pero no puede haber confusión posible.

"El asunto es interesante. Hemos hecho una búsqueda de lo más completo que nos ha sido posible, dentro del tiempo que disponemos para estudiar los asuntos, y no parece que esta cuestión haya sido resuelta por nuestro Tribunal Supremo. El caso que nos cita la parte demandada, *Isaac* v. *del Toro,* 33 D.P.R. 1,000, no la resuelve. Es cierto que en este caso el diligenciamiento fué hecho por una persona particular, pero ello no se adujo como error, y por tanto, el Supremo no pudo pasar sobre esta cuestión. El error invocado por la parte apelante se refiere a la nulidad del diligenciamiento del requerimiento de pago por defectos en el juramento; pero ésa no es la cuestión a resolver en este caso. El Juez de esta Corte, según hemos visto antes, dispuso que el Secretario expidiera mandamiento al márshal para que éste cumpliera el requerimiento. Esto no se hizo. . . El procedimiento especial para el cobro de crédito hipotecario está vigente en su parte inicial hasta el requerimiento al deudor para el pago de la deuda, pero está 'derogado en lo que se refiere a la venta de la propiedad gravada que debe sujetarse en todo a la ley de marzo 9 de 1905 sobre las sentencias y manera de satisfacerlas. *Giménez et al.* v. *Brenes,* 10 D.P.R. 129; *Marxuach* v. *Torres,* 30 D.P.R. 504. Cuando se va a ejecutar una hipoteca, al presentarse el escrito con los documentos correspondientes, el juez dicta un auto. Un decreto dictado por un Juez para que un funcionario bajo su autoridad cumpla y ejecute lo que se le ordena en él. En otras palabras, el acreedor hipotecario comparece

por escrito ante el juez y le expone todos los requisitos que determina el artículo 169 del Reglamento para la ejecución de la Ley Hipotecaria, y entonces el Juez delega su autoridad en el márshal de la Corte, que es el funcionario ejecutivo de la misma, para que éste, a nombre del Tribunal, requiera a los demandados a cumplir lo que se les ordena en el auto, o sea, el pago de la obligación dentro de los 30 días. Y esto se hace así, porque como el demandado no está presente, y la orden del Tribunal equivale a una sentencia, tal requerimiento debe tener alguna solemnidad que le distinga de una mera y simple citación, para comparecer a contestar una demanda. La citación no puede tener el alcance que tiene el auto de requerimiento. La citación no es otra cosa que un mero aviso para que el demandado se entere de la acción establecida en su contra, y comparezca a contestar y defenderse. El Juez no ordena que este aviso se haga. El demandante puede hacerlo dentro de un año de radicar su demanda. El auto que dispone el artículo 169 debe ser hecho inmediatamente. Es un procedimiento sumario. El auto de requerimiento a nuestro juicio implica una intimación de autoridad, toda vez que si el demandado no cumple lo que allí se le ordena, puede el Tribunal, sin más trámites, ordenar la venta en pública subasta de la finca hipotecada.

"Comentaristas que hemos consultado, nos dicen que en España el requerimiento se hacía, o bien por medio de un notario, o bien por medio de un actuario, cuando se usaba en este sentido incluía a los escribanos de actuaciones y a los secretarios de los juzgados municipales. En Puerto Rico, nuestro sistema procesal desconoce esta clase de funcionarios; pero la ley establece el cargo de márshal y le impone ciertas responsabilidades por el no desempeño de las funciones que le están encomendadas. De manera que, conciliando los preceptos de la Ley Hipotecaria, con las nuevas disposiciones de nuestra vigente legislación, debemos llegar a la conclusión de que el auto de requerimiento de que habla la Ley Hipotecaria, no habiendo en Puerto Rico actuarios, debe ser hecho por el márshal de la Corte de Distrito, y no por una persona particular. Amén de que en el caso de autos, no se ha hecho requerimiento alguno, puesto que no basta con decir que se le entregó a la parte ejecutada una copia de la demanda y una copia de la citación, sin que se diga que se le han entregado también copias de los demás documentos que se acompañaron con el escrito inicial."

Estamos enteramente conformes con la apreciación de las pruebas hecha por la corte sentenciadora y con su razona-

miento y conclusiones legales en ambos extremos. En relación con el segundo, recientemente esta corte en el caso de *González Martínez v. Registrador*, 39 D.P.R. 835, resolvió que "En los ejecutivos sumarios hipotecarios, siendo la orden de requerimiento de pago un acto judicial que emana directamente del juez o la corte, a los funcionarios auxiliares de ésta es a quienes compete cumplimentarla."

Lo que acabamos de decir resuelve en contra del apelante el noveno error que se señala como cometido por la corte al declarar sin lugar su moción de *nonsuit*.

Por el décimo error se levanta una interesante cuestión de derecho. Se formula así: "La corte erró al condenar a los demandados a pagar daños y perjuicios por sufrimientos morales."

La corte sentenciadora dijo en su opinión:

"En cuanto a los daños morales, creemos que los preceptos del artículo 1803 del Código Civil vigente nos dan autoridad para conceder indemnización por los perjuicios que naturalmente resulten de los daños que se ocasionan. El precepto de la ley es terminante. El que por acción u omisión causa daño a otro, mediando culpa o negligencia, está obligado a reparar el daño causado. Tal daño tiene que surgir como una consecuencia natural del acto u omisión que le origina o lo causa. La ley ampara a toda persona que, sin un debido procedimiento, se ve privada de su propiedad, autorizándole a demandar la nulidad de una actuación judicial que lo privó a destiempo o inoportunamente, de lo que constituía su patrimonio. Si tal privación trae como consecuencia natural daños materiales y angustias y sufrimientos mentales y morales, y hay prueba de tales daños, creemos que los mismos pueden y deben ser compensados de acuerdo con los preceptos del artículo 1803 del Código Civil. Sólo así, dando una amplia interpretación a los preceptos de la ley sustantiva, pueden hallar amparo y protección todas las nuevas modalidades que surgen a la vida del derecho, por imperio de las leyes ineludibles del progreso.

"No puede haber duda de que la interposición del ejecutivo sumario fué un acto voluntario de la demandada. Ella fué el agente activo en un procedimiento del que los demandantes no podían defenderse. La acción, generadora de los daños, surge clara de las

actuaciones de la parte demandada. Tal acción ha originado perjuicios.

"Tanto de naturaleza material como los que ocasionan los incruentos dolores morales que nos producen las angustias y sufrimientos mentales al vernos privados de lo nuestro, cuando se nos llama a responder de una obligación no vencida, y en un procedimiento en el que no podemos defendernos."

Parece conveniente agregar que en el párrafo anterior de su opinión la corte sentenciadora analizó la prueba con respecto a los daños que se alegó que se habían ocasionado en los otros bienes de los demandantes con motivo del procedimiento hipotecario, y concluyó que no había en ella elementos bastantes para concederlos.

Hemos estudiado cuidadosamente el problema y a nuestro juicio la corte de distrito lo resolvió erróneamente. No importa que la demanda se titulara "sobre nulidad de ejecutivo hipotecario, otros extremos y daños y perjuicios." La acción que tiene el demandante es la que le reconoce el artículo 169 del reglamento de la Ley Hipotecaria que sujeta al ejecutante a indemnizar cuantos daños y perjuicios irrogue al deudor o a terceras personas interesadas, por malicia o negligencia en la fiel exposición de los hechos, y esos daños son los que determina el artículo 1270 del Código Civil, o sea la restitución de la cosa objeto del contrato, con sus frutos, y el precio con sus intereses, u otros de naturaleza semejante. Regular este caso por las disposiciones del artículo 1803 del Código Civil sería sacarlo de su propio centro. Véase la decisión de esta corte en *Arvelo* v. *Banco*, 29 D.P.R. 1066.

Los errores 11, 12 y 13 no se cometieron a nuestro juicio. Creemos que las otras reconvenciones que se declaran sin lugar lo fueron propiamente; que no se ha demostrado abuso de discreción por parte de la corte al imponer las costas a los demandados, y que la sentencia apelada no es contraria a derecho, con excepción de su pronunciamiento relativo a la condena de los daños y perjuicios por sufrimientos morales.

*Debe modificarse la sentencia recurrida eliminando de ella la condena a pagar "$4,500 como indemnización por los dolores morales producidos por la angustia y sufrimientos mentales tenidos por los demandantes con motivo de la ejecución de su finca por la demandada", y así modificada, confirmarse.*