JUAN PERALES, peticionario, *v.* LA CORTE DE DISTRITO DE HUMACAO, HON. R. ARJONA SIACA, JUEZ, demandada.

No. 848.—*Sometido:* Julio 11, 1932. *Resuelto:* Julio 26, 1932.

*Andrés Mena,* abogado del peticionario.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

La cuestión envuelta en este caso es la de si en un procedimiento ejecutivo hipotecario al requerirse de pago al deudor es necesario entregarle copia del escrito inicial y de todos los documentos que ordena el artículo 128 de la Ley Hipotecaria y el 168 de su Reglamento que se acompañen al mismo.

El caso se desarrolló como sigue: Juan Perales, por medio de su abogado, inició en la Corte de Distrito de Humacao un procedimiento para el cobro de cierta deuda garantizada con hipoteca. Acompañó a su escrito la escritura de hipoteca inscrita en el registro de la propiedad y la certificación expedida por el registrador declarando que el gravamen no estaba cancelado ni se hallaba pendiente de cancelación.

Examinó el juez los documentos y pareciéndoles suficientes ordenó que se requiriera personalmente a los deudores, nombrándolos, para que pagaran al demandante las cantidades reclamadas, especificándose éstas.

El mandamiento de requerimiento ordenado fué expedido por el secretario bajo el sello de la corte y fué cumplimentado por el márshal de la misma. Del diligenciamiento transcribimos lo que sigue:

"Yo, Augusto Veve, Márshal. . . . . Certifico: Que en cumplimiento de la presente orden requerí de pago a. . . . . entregando a cada uno de dichos demandados en el acto de requerimiento copia del escrito inicial 'o demanda, copia de la orden de la Corte y copia del mandamiento de requerimiento de pago, apercibiendo. . . . . ''

Vencido el plazo concedido a los deudores para satisfacer su deuda, sin que lo hicieran, volvió a comparecer el acreedor pidiendo a la corte que de conformidad con lo dispuesto en la Ley Hipotecaria y su Reglamento y en la Ley relativa a las sentencias y a la manera de satisfacerlas de 1905, ordenara que el demandante recuperara su crédito mediante venta en pública subasta de la finca hipotecada.

Fué entonces que el juez de distrito por los fundamentos expresados en una cuidadosa opinión declaró sin lugar la moción del acreedor entendiendo que el requerimiento no tenía validez por no haberse entregado a los deudores copia de la escritura de hipoteca que era también uno de los documentos acompañados por mandato de la ley al escrito inicial del procedimiento.

El acreedor pidió al juez que reconsiderara su resolución y el juez se negó a ello. Entonces se dirigió a esta Corte Suprema por medio de este recurso extraordinario de *certiorari*. El auto fué expedido y todos los documentos están ante nosotros.

En el caso de *Petterson* v. *Contreras,* 42 D.P.R. 491, se resolvió de modo terminante que ni la Ley Hipotecaria ni su Reglamento exigían la entrega al deudor de la copia de la escritura de hipoteca al verificarse el requerimiento.

Pero se dice que en un caso posterior, *Pontón* v. *Sucesores de Huertas González,* 42 D.P.R. 529, 537, decidimos que la entrega era necesaria.

Es cierto que en este último caso el juez de distrito como argumento adicional para sostener su conclusión dijo:

"Amén de que en el caso de autos, no se ha hecho requerimiento alguno, puesto que no basta con decir que se le entregó a la parte ejecutada una copia de la demanda y una copia de la citación, sin que se diga que se le han entregado también copias de los demás documentos que se acompañaron con el escrito inicial."

Y es cierto que la opinión del juez de distrito se transcribió con aprobación, pero leyendo todo lo transcrito y lo dicho por esta Corte Suprema se verá que no fué ésa la cuestión en que estuvo fija la mente de la corte, sino aquélla que luego se resumió como jurisprudencia establecida, a saber: "En los ejecutivos sumarios hipotecarios, la orden de requerimiento de pago debe ser cumplimentada por los funcionarios auxiliares de las cortes y no por una persona particular."

Véase lo que a continuación de la referencia a la transcripción, hablando por sí misma, dijo esta corte invocando su propio caso de *González Martínez* v. *Registrador*, 39 D.P.R. 835:

"En los ejecutivos sumarios hipotecarios, siendo la orden de requerimiento de pago un acto judicial que emana directamente del juez o la corte, a los funcionarios auxiliares de ésta es a quienes compete cumplimentarla."

Se citó por el juez de distrito el caso de *Torres* v. *Lothrop, Luce & Co.,* 16 D.P.R. 180. Copia el juez del resumen lo que sigue:

"Si bien es cierto que el requerimiento al deudor es necesario al iniciar un procedimiento hipotecario, no era requisito previo notificarle la demanda antes de empezar a regir el nuevo Código de Enjuiciamiento Civil."

E infiere que después de empezar a regir el Código, la notificación del escrito es un requisito previo imprescindible.

Examinado el texto de la opinión se encuentra como base del resumen, lo que sigue:

"La cuarta objeción que se ha formulado consiste en que a Torres Zayas no le fué entregada una copia de la demanda. Los procedimientos dieron principio antes de que empezara a regir el Código de Enjuiciamiento Civil, y no se nos ha indicado nada que justifique que el requerimiento no se hubiera practicado en la forma exigida por la ley hipotecaria."

De ello nada puede deducirse que se resolviera claramente en definitiva, en un sentido o en otro, para cuando estuviera en vigor el Código.

También se cita por el juez de distrito el caso de *Mestre* v. *Michelena,* 30 D.P.R. 148, 154, citado en el de Pontón, *supra.* La parte que se invoca aparece al final del segundo párrafo de la página 154, y dice:

"Asimismo, si como dicen los apelantes, el requerimiento es semejante al emplazamiento en un pleito ordinario, entonces sus defectos podían quedar subsanados probándose que realmente se hizo la no-

tificación a l'os deudores como se indica en los autos al discutirse la excepción de cosa juzgada.''

Es verdad que el requerimiento es semejante al emplazamiento, ya que por él se pone en conocimiento del deudor la existencia del procedimiento judicial iniciado contra él, pero ello no quiere decir que ambos actos sean enteramente iguales y deban verificarse con las mismas formalidades.

Lo que dice la Ley Hipotecaria en cuanto al requerimiento está contenido en su artículo 128, así:

''*      *      *      *      *      *      *

''Se requerirá al deudor de pago si residiere en el. lugar en que radica la finca y se supiere su domicilio; bastará en otro caso que se requiera al que se halle al frente de la finca en cualquier concepto legal, a fin de que ponga en conocimiento del dueño la reclamación.''

Ni la Ley ni su Reglamento explican la forma en que el requerimiento debe practicarse. El último en su artículo 176, segundo párrafo, prescribe:

''Las disposiciones de la Ley de Enjuiciamiento Civil vigentes en Cuba, Puerto Rico y Filipinas, serán aplicables a estos procedimientos como supletorias, en cuanto no se opongan a lo prescrito en la Hipotecaria y en el presente reglamento.''

Refiriéndose a requerimientos, dice el artículo 275 de la Ley de Enjuiciamiento Civil española, igual al del mismo número de la de Cuba y Puerto Rico:

''Los requerimientos se harán notificando al requerido, en la forma prevenida, la providencia en que se mande, expresando el actuario en la diligencia haberle hecho el requerimiento en aquélla ordenado.

Y en cuanto a la notificación dispone la misma ley, artículo 262, igual al de la de Cuba y Puerto Rico, que:.

''Las notificaciones se practicarán por el escribano, secretario u oficial de Sala autorizado para ello, leyendo íntegramente la providencia a la persona a quien se hagan, y dándole en el acto copia literal de ella, firmada por el actuario, aunque no la pida, expresando el negocio a que se refiera.

''De lo uno y de lo otro deberá hacerse expresión en la diligencia.''

Siguen otras disposiciones importantes, pero tampoco en ellas se ordena la entrega de copia de otros documentos que no sean la providencia que se ordena notificar.

Dice Manresa comentando los artículos 262 y 263 de la Ley de Enjuiciamiento, en parte así:

"La ley de 4 de junio de 1837, sobre notificaciones, dictó las reglas convenientes para ejecutarlas, corrigiendo los abusos y corruptelas de la práctica antigua. Eran tan prudentes y acertadas sus disposiciones, que se creía haber llegado a la perfección en esta materia, y se reprodujeron sustancialmente en los artículos 21 al 24 de la Ley de Enjuiciamiento Civil de 1855. Pero la experiencia ha hecho ver que aún había algo que corregir no por defecto de la ley, sino por la malicia o negligencia de los encargados de cumplirla, y a este fin se dirigen las modificaciones introducidas en lo que se hallaba dispuesto sobre el plazo, modo y forma de hacer las notificaciones, y la responsabilidad del oficial público, encargado de ejecutarlas. Es de tal importancia una notificación para la defensa de los derechos litigiosos, que cualquier abuso puede acarrear perjuicios irreparables.

"* * * * * * *

"Se previene en el 262, que la copia de la providencia, auto o sentencia, que autorizada con su firma debe entregar el actuario o la persona notificada, aunque no la pida, debe ser *literal*, como se ordenó en la primera de dichas leyes, aunque se omitió esta circunstancia en la segunda, y por consiguiente debe contener al pie de la letra toda la resolución judicial, sin limitarla a la parte dispositiva. Y se añade que en la misma copia se expresará el negocio a que se refiera, con el objeto de evitar el inconveniente que resultaba de no hacer dicha expresión, pues como, por regla general, en las providencias no se hace mención de los nombres de los litigantes ni del asunto a que se refieren, y suelen ser iguales las de mera tramitación, si no se expresan dichas circunstancias en las copias, no puede saberse con certeza cuál sea el asunto en que haya recaído la providencia."

Y comentando luego el artículo que se refiere al requerimiento, expresa:

"Después de haberse determinado en los artículos anteriores la forma en que han de hacerse las notificaciones, citaciones y emplazamientos, se trata en el presente de los requerimientos, siguiendo el orden establecido en el epígrafe de esta sección. Conforme a la práctica establecida, se dispone que los requerimientos se hagan en la

misma forma que las notificaciones, esto es, leyendo íntegramente el actuario la providencia al requerido y dándole copia literal de ella, pero expresando además en la diligencia haberle hecho el requerimiento en aquélla ordenado y la respuesta que diere, si fuese habido a la primera diligencia en busca. Cuando no se le encuentre en su casa o habitación, o no sea conocido su domicilio, se practicará lo que para cada uno de estos casos se previene en los arts. 266 al 269.''

Estas cuestiones son de tal importancia que los abogados en quienes confían los litigantes la gestión o defensa de sus casos deben redoblar sus esfuerzos a fin de que todo se cumpla en debida forma.

Ahora bien, atendido lo complejo que resultan, no deben los tribunales por errores leves que no afecten los derechos substanciales de las partes, anular procedimientos que de hecho y de derecho son en verdad enteramente válidos.

Refiriéndose Manresa en sus Comentarios a la Ley de Enjuiciamiento Civil a la reforma introducida en las Islas de Cuba y Puerto Rico en el procedimiento ejecutivo al promulgarse la Ley Hipotecaria y su Reglamento, con su extraordinario dominio de todas las cuestiones legales y su acostumbrada claridad, penetra en la esencia de la reforma y dice:

''La Ley de Enjuiciamiento Civil para Cuba y Puerto Rico aceptó el procedimiento establecido en la de la Península para el juicio ejecutivo, sin otra modificación que la exigida por la diferencia de valor en la moneda. El mismo procedimiento regía en las Islas Filipinas desde que por Real decreto de 3 de febrero de 1888 se hizo extensiva a aquellas islas la ley de la Península. Pero ese procedimiento, en cuanto se relaciona con los créditos hipotecarios, ha sido modificado esencialmente por la nueva Ley Hipotecaria para las provincias de Ultramar, que reformando las que regían en Cuba, Puerto Rico y Filipinas, ha sido sancionada y publicada en 14 de julio del presente año 1893, y por el reglamento para la ejecución de dicha ley, aprobado por Real decreto de 18 del mismo mes de julio, mandando a la vez que, tanto aquélla como éste, empezarán a regir en cada una de dichas islas a los veinte días de terminarse la publicación de la ley en las Gacetas oficiales respectivas.

"Esa reforma tiene por objeto dar mayores garantías y facilidades al crédito territorial en nuestras provincias ultramarinas, cohibido en parte por el procedimiento largo, costoso e inseguro para hacer efectivos los créditos hipotecarios. Por ella se suprime el primer período del juicio ejecutivo, ordenado en la sección 1ª del presente título, y se comienza el procedimiento judicial por la vía de apremio, simplificándola cuanto es posible."

Y luego, como explicación al apéndice en que transcribe los preceptos relativos a la reforma, vuelve a expresar:

"En la introducción del presente título (páginas 442 y 443 de este tomo) se llamó la atención sobre la importante y radical reforma que por la nueva Ley Hipotecaria para las provincias de Ultramar, de 14 de julio de 1893 y su reglamento de 18 del mismo mes, se había introducido en el procedimiento del juicio ejecutivo, que en aquellas provincias era igual al de la Península, pero sólo con relación a los créditos hipotecarios; reforma que consiste en suprimir el procedimiento ejecutivo, ordenado en la sección 1ª. de este título, comenzando las actuaciones judiciales por la vía de apremio, simplificada en cuanto es posible."

La vía de apremio comienza después de dictada y consentida la sentencia de remate. De suerte que al requerirse al deudor lo que en verdad se le notifica es una sentencia, dándosele treinta días para satisfacerla. Además, el documento en que consta la deuda garantizada con hipoteca que se ordena satisfacer es un documento público, perfectamente conocido del deudor, ya que fué otorgado por él mismo. La entrega de una copia no es, pues, un requisito imprescindible.

Resolver que debe aplicarse al requerimiento todo lo dispuesto en el vigente Código de Enjuiciamiento Civil para el emplazamiento, sería introducir en la Ley Hipotecaria disposiciones que no contiene, quedando virtualmente anulados cientos de procedimientos seguidos al amparo de dicha ley y de acuerdo con la práctica en vigor por muchos años.

Parece conveniente transcribir lo que sigue de la petición de *certiorari*. Es así:

"Desde 1906, vigente ya el actual Código de Enjuiciamiento Civil, esa Hon. Corte Suprema en el caso de *Giménez* vs. *Brenes,* 10 D.P.R. 128, dijo que el Código de Enjuiciamiento Civil regula en el orden común y ordinario las acciones civiles, y que el procedimiento sumario para el cobro de hipotecas es el resultado de un contrato entre partes, en el que se han convenido las prestaciones y se ha pactado también el medio de hacer efectivo el crédito en caso de incumplimiento. De modo que el Código de Enjuiciamiento Civil, requiere acción en ejercicio, partes contendientes, demandante y demandada, juicio y sentencia final que ponga término al debate, y el procedimiento sumario nada de eso exige porque las partes así lo han querido.

"\*      \*      \*      \*      \*      \*      \*

"Durante veinte y seis años consecutivos esa Hon. Corte Suprema ha venido sosteniendo que los procedimientos sumarios hipotecarios son especiales y *ex parte,* que al deudor se le requiere únicamente para que pague y finalmente que no constituyen cosa juzgada. *Anaud* vs. *Martínez,* 40 D.P.R. 669.

"\*      \*      \*      \*      \*      \*      \*

"El letrado que suscribe hace veinte años que postula ante la Corte de Distrito de Humacao, y durante dicho tiempo ha tramitado centenares de procedimientos sumarios hipotecarios. El presente es el primero en el cual se le exige que se notifique a la parte demandada las aludidas copias. Su allanamiento incondicional a esta disposición implicaría el reconocimiento tácito de que todos los procedimientos anteriores que él tramitó, son nulos. Y este letrado en buena ética profesional está obligado a sostener su validez y a invocar en su apoyo además de las autoridades enumeradas, la regla de *stare decisis,* o sea que no es lícito cambiar la interpretación de la Ley Hipotecaria seguida durante veinte y seis años consecutivos, sin que haya un motivo muy poderoso para ello, que en el presente caso entendemos que no existe."

En tal virtud, no siendo necesaria la entrega de la copia de la escritura de hipoteca al practicarse el requerimiento por no exigirlo la ley, erró la corte de distrito al anular por tal motivo el requerimiento practicado en este caso y *su resolución debe dejarse sin efecto, devolviéndose el procedimiento para que continúe tramitándose de acuerdo con la ley.*