TOMASA ROMÁN, demandante y apelada, *v.* LA SUCN. DE DON LUIS DOMICH,

No. 4442.—*Visto:* Junio 15, 1928. *Resuelto:* Junio 20, 1928.

*Buenaventura Esteves,* abogado de la apelante; *E. Martínez Avilés,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El presente es un pleito sobre reconocimiento de hijo natural. La demanda es suficiente. Alega no sólo un motivo sino varios que dan lugar al reconocimiento. La contestación niega los hechos en que el reconocimiento se basa y alega la defensa de "laches." Fué el pleito a juicio y la corte lo decidió a favor de la parte demandante, emitiendo una relación del caso y opinión de la cual transcribimos lo que sigue:

"La vista de este caso tuvo lugar el día 21 de julio de 1927, con asistencia de las partes y sus respectivos abogados. Se presentó prueba documental y testifical. Y el caso quedó concluso para sentencia.

"Allá por el año 1906 y en un barrio de Camuy, Luis González

Domich y Tomasa Román, ambos en estado de soltería y sin impedimento para contraer matrimonio, entablaron relaciones íntimas de carácter marital. González era dueño de una finca. Tenía como agregado a Vicente Vélez; y éste vivía con su esposa y sus hijos en una modesta casa de paja ubicada en la misma finca. Por orden expresa de González, su referido agregado construyó personalmente una pequeña habitación anexa a la casa que vivía. A requerimiento de González, Tomasa Román fué a vivir a casa de Vélez ocupando la habitación así construída. González la visitaba con frecuencia y especialmente de noche quedándose a dormir con ella. Tuvieron relaciones sexuales. Resultado de estas relaciones sexuales extramatrimoniales fué el que Tomasa quedara en estado de concepción. Así transcurrieron tres meses. Entonces González estuvo personalmente en casa de Luisa Herrera, quien había catorce años vivía en concubinato con Maximino González, hermano de Luis, y obtuvo de la Herrera que le alquilara una habitación para llevar allí a Tomasa Román. Esta, a instancias de González, fué a alojarse y se alojó a casa de la Herrera. Allí continuó visitándola González Domich tanto de día como de noche, sin interrumpir sus relaciones maritales. Ninguna otra persona vivía con ella. González Domich la enviaba el diario para su alimentación. Así las cosas, el día 8 de noviembre de 1907, Tomasa Román dió a luz un niño. En su parto fué asistida por Monserrate Pérez, enviada a buscar al efecto por González Domich y a quien retribuyó o pagó el propio González en persona por la asistencia prestada a Tomasa, y la encargó cuidara o atendiera al niño hasta que la madre estuviera de alta. El niño fué inscrito en el Registro Civil con el nombre de Avelino Román, hijo natural de Tomasa. González Domich siguió visitándoles, atendiendo a las necesidades de la madre y el niño; y encargó especialmente a Luisa Herrera que cristianase o bautizase al niño y al efecto ésta le sirvió de madrina al menor en su bautismo; y también le encargó que si algún día Tomasa se iba de la casa, se quedara con el niño que él le ayudaría a sostenerlo. Tiempo más tarde las relaciones entre González Domich y Tomasa Román tuvieron una crisis. Vino la ruptura. El niño se quedó al cuidado inmediato y en el hogar de Luisa Herrera. Era conocido con el nombre· de Ramón, y su diminutivo Moncho González. Luis González Domich le enviaba trajes, zapatos, sombreros; lo visitaba, lo llamaba 'hijo', le bendecía, le acariciaba; y cuando fué por primera vez a la escuela le dijo que se anotara con su apellido, con el de González, y así lo hizo el menor y con ese nombre fué conocido en los colegios. Le alentaba para que aprovechase el tiempo estudiando, y le prometió

enviarle a un colegio a hacer estudios superiores. Cuando quince años más tarde, en 1921, González Domich se enfermó y agravó el niño fué a verle todos los días; y cuando murió estuvo junto a su cadáver. Estos son los hechos probados por el demandante. La prueba de los demandados no los contradicen. Esta se reduce a establecer que González Domich era hombre que siempre vivió con su familia y a quien nunca se le conoció novia ni concubina.

"La evidencia ofrecida demuestra como hecho innegable que Luis González Domich sostuvo relaciones sexuales extramatrimoniales con Tomasa Román y que las relaciones íntimas surgidas de tal estado de cosas continuaron así hasta la fecha del nacimiento del niño Avelino Román, generalmente conocido por Ramón González, y aún después de la misma. Estamos convencidos de que Luis González Domich fué su padre. Esta conclusión se deduce de toda la prueba que fué presentada. Tomasa Román, madre de Ramón, vivió en casas donde expresamente la alojó Luis González Domich, y apenas existe duda alguna de que éste atendió a sus necesidades o contribuyó a su sostenimiento aún después del nacimiento de Ramón; ni de que trató, privada y públicamente, a Ramón como su hijo, y le atendió en sus necesidades. Las declaraciones, francas y abiertas de los testigos del demandante, especialmente las de Luisa Herrera, Monserrate Pérez, Casiano Franqui y Manuel Herrera, por su forma de expresión y sus conductas en la silla de testigos, no dejan en el ánimo de la corte otra impresión que la firme de que Avelino Román, siempre conocido con el nombre de Ramón González, es hijo de Luis González Domich habido en Tomasa Román cuando ambos eran solteros y en condición de casarse, tanto a la concepción como al nacimiento del mismo.

"Y si en esas circunstancias fué procreado y nació Avelino Román o Ramón González el día 8 de noviembre de 1907, la cuestión relativa a su reconocimiento se regula por las disposiciones del art. 189 del Cód. Civil Revisado entonces vigente, que prescribe, en parte, lo siguiente:

" 'El padre está obligado a reconocer al hijo ilegítimo en los casos siguientes:

\*       \*       \*       \*       \*       \*       \*

" '2. Cuando pública o privadamente le tenga por hijo suyo o le haya llamado tal en conversación o se ocupe de su educación y sostenimiento.

" '3. Cuando la madre fué conocida viviendo en concubinato con el padre al tiempo del embarazo o nacimiento del hijo, o cuando éste haya nacido llevando sus padres relaciones amorosas.'

"Con arreglo a la prueba, puede decirse que Luis González Domich y Tomasa Román no vivieron en concubinato ni llevaron relaciones amorosas. El tenía un hogar propio independiente. Nada hay que demuestre que tenían la intención de casarse o estaban comprometidos para ello. *Medina* vs. *Sucn. Bird,* 30 D.P.R. 158; *Busigó* vs. *Sucn. Tejera,* 33 D.P.R. 505. El presente caso no cae, pues, dentro del inciso tercero del citado artículo 189. Pero sí puede afirmarse que, con arreglo a la prueba, Luis González Domich tuvo pública y privadamente por hijo al niño de que se trata, y el caso cae dentro de las disposiciones del segundo inciso.

"El aquí demandante nació en época en que actos aislados de reconocimiento, si fueron suficientemente probados, bastan para establecer un estado legal. *Mercado* vs. *Sucn. Mangual,* 35 D.P.R. 422. La prueba de estos actos en el presente caso es convincente. Desde que Ramón nació, su padre se encargó de establecer ese estado legal, encomendando la atención del niño en sus primeros días a Monserrate Pérez, mientras la madre se restablecía; pidiendo y obteniendo de Luisa Herrera que lo bautizase y que se hiciese, finalmente, cargo del mismo; atendiendo sus necesidades mientras estuvo al cuidado de Luisa Herrera; diciéndole 'hijo' y llamando la atención de su parecido en presencia de Carmelo Vales; bendiciéndole y llamándole 'hijo' e incitándole a estudiar y ofreciéndole la oportunidad de asistir a colegios de enseñanza superior, en presencia de Casiano Franqui; repitiendo análogas escenas en presencia de Manuel Herrera; hasta hacerle conocer, además esa relación al propio demandante. Estos actos, más que aislados, casi constituyen una serie ininterrumpida de relaciones entre padre e hijo. Y si se prueba que el padre pública o privadamente ha tenido al hijo por suyo o lo ha llamado tal en conversación o se ha ocupado de su educación o sostenimiento, puede obtenerse la declaración del reconocimiento de hijo natural. *Cruz* vs. *Quiñones,* 31 D.P.R. 339. Este es el caso presente.

"Los demandados alegan como defensa especial que un pleito sobre este mismo asunto fué entablado, abandonado y archivado, transcurriendo varios años sin que se hiciera gestiones para tramitar dicho pleito. El pleito a que se hace referencia es el 6,700, sobre filiación y partición de herencia, radicado a nombre del demandante por su madre el 20 de octubre de 1921, y tenido, a propia iniciativa y acción de la corte, por desistido el 15 de marzo de 1923, después de haber archivado los demandados una moción para eliminar que no fué señalada ni discutida ni resuelta. No aparece que se diera al demandante una oportunidad para comparecer y exponer

causas por las cuales la corte debiera ordenar o no el archivo del caso. Lo cierto es que este archivo fué decretado a espaldas del demandante. La nueva acción fué establecida el 18 de junio de 1926. Pero es que 'los períodos, transcurridos los cuales el abandono o la negligencia en el ejercicio de las acciones, las destruye por completo, están expresamente fijados por el legislador en esta isla, y esos períodos y no otros son los que deben tomarse en cuenta por el tribunal sentenciador.' *Alcaide* vs. *Morales*, 28 D.P.R. 278, 293. En el presente caso, de acuerdo con la ley, el término de prescripción no había transcurrido. Entre las dos acciones establecidas siempre a nombre del demandante, por su madre, pasaron tres años y tres meses. El demandante era menor de edad al radicarse ambas demandas; y el término para ejercitar su acción no había prescrito. A la hora en que se redacta esta opinión continúa siendo un menor de edad el demandante. No vemos cómo puede ser aplicable la doctrina de *Laches* a este asunto para estimar que existe una negligencia por parte del demandante que es un menor que no puede comparecer personalmente en corte sino a través de quien sobre él ejerce la patria potestad, a fin de destruir en equidad su acción.''

No conforme la parte demandada, apeló para ante esta Corte Suprema señalando en su alegato tres errores.

■■ Por el primero se sostiene que la corte erró al no archivar al mismo tiempo que dictó su sentencia una opinión escrita con los requisitos que exige la Ley No. 25 de 1925.

Examinada la relación del caso y opinión, una gran parte de la cual se deja transcrita, a la luz de la ley invocada, se concluye que la dicha ley fué substancialmente cumplida. Aunque no en párrafos numerados y separados debidamente, es lo cierto que los hechos que el juez sentenciador estimó probados fueron por él consignados. Tampoco puede sostenerse que dejara de expresar los motivos que tuvo para decidir el caso a favor del demandante. Y cuando se cumple substancialmente con la expresada ley, ya esta corte ha decidido en varios casos que es bastante.

El segundo señalamiento de error es como sigue:

''2º—La corte de distrito cometió manifiesto error y actuó con marcado prejuicio en la apreciación de las pruebas en este caso: (a) al estimar que la prueba de la demandante es suficiente para

sostener las alegaciones de su demanda y para establecer un caso de Reconocimiento de Hijo Natural; y (b) al declarar que la prueba .de los demandados no contradice a la de la demandante."

Diez y siete páginas de su alegato dedica la apelante a discutir este error. No tiene razón a nuestro juicio. No era necesario que se probara el concubinato alegado. Tampoco las relaciones amorosas en el sentido que usualmente se les da, a saber: aquellas que preceden al matrimonio o a la promesa de matrimonio. Basta que se probara como se probó de modo robusto y convincente que Luis González Domich, el causante de la sucesión demandada, tuvo relaciones sexuales con la demandante Tomasa Román, naciendo como consecuencia de ellas el niño Avelino Román, conocido por Ramón González, a quien el padre atendió, sostuvo y reconoció como hijo suyo en la forma que se expresa por el juez sentenciador.

Es cierto que se notan algunas contradicciones en la prueba, pero no de tal naturaleza que la desacrediten. Se hace mucho énfasis en el alegato y se insistió en el informe oral en la contradicción que se advierte en relación con la fecha del nacimiento del niño según la comadrona y según el registro civil.

Nos parece que sobre ese extremo se ha expresado con ingenuidad y como sucede generalmente cuando se adopta tal línea de conducta, con acierto, la parte apelada al contestar a la apelante, en su alegato, así:

"Se trata de impugnar la veracidad de la testigo Monserrate Pérez, porque dijo que el niño había nacido la víspera de la Monserrate por la madrugada. Según el compañero Esteves la Monserrate es el día 8 de septiembre. La partida de nacimiento de Avelino Román, presentada en evidencia dice que el niño nació el 8 de noviembre a las cinco de la tarde. El Juez acepta la certificación oficial y concluye que el niño nació el 8 de noviembre. Hay dos meses de diferencia. Nos inclinamos a creer que Monserrate Pérez es la que está en lo cierto. Tomasa Román fué a inscribir el niño el día 31 de diciembre. De acuerdo con la ley ella estaba obligada a inscribirlo dentro de los 60 días. Si hubiera declarado al encar-

gado del Registro que nació el 8 de septiembre hubiera estado sujeta a sufrir un castigo. Tal vez si ante ese temor, y como sucede con frecuencia, ella, Tomasa Román, falseó la verdad en cuanto a aquel extremo. Lo cierto es que ella no fué preguntada, y fué llamada como testigo de los demandados, sobre el particular y para que explicara la contradicción surgida al parecer, entre su declaración ante el Encargado del Registro Civil de Camuy el 31 de diciembre de 1907 y la declaración de Monserrate Pérez.''

En cuanto a que el juez concluyera erróneamente que no hubo prueba contradictoria por parte de la demandada, nos parece que el juez explica satisfactoriamente el alcance de su afirmación. Si se estudia bien la prueba aportada por la demandada, se verá que en efecto no contradice de modo directo los hechos concretos afirmados por la prueba de la demandante. Expone en general que González Domich era hombre de buenas costumbres, que nunca se casó y vivió siempre con su familia, sin que se le conociera novia o concubina, siendo de naturaleza enfermiza y retraída. El que así se le considerara, no destruye necesariamente el hecho de las relaciones sexuales, el del nacimiento del niño como resultado de ellas y el del reconocimiento.

El último error que se alega es el de no haber la corte apreciado a favor de la demandada su defensa de ''laches.''

Lo dicho por el juez sentenciador en su opinión es suficiente, pero aún en el caso de que sin haber transcurrido el término fijado por la ley para el ejercicio de la acción, pudiera alegarse la defensa de ''laches,'' las circunstancias no revelarían en manera alguna un abuso de discreción por parte de la corte. Al contrario. La jurisprudencia sobre la materia dice:

''No hay regla alguna artificial o absoluta respecto al período de tiempo o a las circunstancias que justifiquen la aplicación de la doctrina de demora (*laches*). La cuestión debe ser resuelta tomando en consideración todos los hechos y circunstancias del caso en controversia. La demora es una cuestión de hecho que debe ser resuelta por la prueba y cada caso generalmente debe determinarse

por sí solo. En otras palabras, la cuestión es tal que descansa en la sana discreción de la corte.'' 10 Cal. Jur. p. 526.

*Por virtud de todo lo expuesto, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*