F. RODRÍGUEZ HERMANOS & COMPAÑÍA, demandante, apelante y apelada, *v.* ENCARNACIÓN ABOY VDA. DE CINTRÓN, demandada, apelada y apelante.

Núm. 9176.—*Sometido:* Diciembre 26, 1945. *Resuelto:* Julio 26, 1946.

*Miranda & Miranda Esteve,* abogados de la apelante apelada; *Brown, Newsom & Córdova,* abogados de la apelada apelante.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Fermín Rodríguez y su esposa Matilde Lanza Martínez, por escritura pública de 18 de diciembre de 1925, inscrita

en el Registro de la Propiedad, declararon haber recibido en calidad de préstamo, de Encarnación Aboy Vda. de Cintrón, la suma de $25,000, que se obligaron a devolverle en los plazos siguientes: $5,000 el día 18 de diciembre de 1927, y los restantes $20,000 en igual día y mes de 1928, devengando dicho préstamo intereses del 10 por ciento anual hasta su pago definitivo, pagaderos por mensualidades vencidas; y en garantía del pago del capital prestado, de sus intereses convenidos y de un crédito adicional de $2,000, constituyeron hipoteca sobre una finca urbana.

Por escritura de 11 de diciembre de 1928, también inscrita en el Registro de la Propiedad, el contrato de hipoteca antes relacionado quedó modificado y prorrogado en la forma siguiente: El pago del préstamo de $25,000 quedó prorrogado por el término de cinco años a contar desde el 18 de diciembre de 1928, para ser satisfecho en los siguientes plazos anuales: $2,000 el día 18 de diciembre de 1929; $3,000 en cada uno de los días 18 de diciembre de los años 1930, 1931 y 1932; y los restantes $14,000 el día 18 de diciembre de 1933, reduciéndose el tipo de interés original del 10 por ciento al 9 por ciento anual pagadero por mensualidades vencidas; y siendo condición la de que la acreedora se reservaba el derecho de declarar vencido el término del préstamo hipotecario en caso de incumplimiento de cualquiera de las condiciones estipuladas en la escritura de hipoteca.

La mercantil F. Rodríguez Hermanos & Compañía adquirió el inmueble objeto de la hipoteca, por escritura de compra de 17 de enero de 1929, asumiendo dicha mercantil la obligación del pago de la hipoteca por la suma de $25,000 bajo las condiciones antes narradas.

Mediante contrato privado otorgado el 22 de mayo de 1930, por Fermín Rodríguez y su esposa Matilde Lanza Martínez, la mercantil F. Rodríguez Hermanos & Compañía, representada por su gestor Fermín Rodríguez, y Encarnación Aboy Vda. de Cintrón, representada por su apoderado José

Hernández Usera, acordaron prorrogar y prorrogaron hasta el día 18 de diciembre de 1930, el plazo hipotecario de $2,000 vencido el 18 de diciembre de 1929, bajo las mismas condiciones establecidas en la escritura de constitución de hipoteca, pero rigiendo el interés del 10 por ciento anual hasta el pago definitivo de este plazo hipotecario. Este contrato privado nunca se elevó a escritura pública y, por tanto, no se inscribió en el Registro de la Propiedad.

La acreedora señora Aboy Vda. de Cintrón instó en la Corte de Distrito de San Juan en 19 de febrero de 1932 un procedimiento sumario ejecutivo contra F. Rodríguez Hermanos & Compañía alegando: Que la referida mercantil adeudaba a la acreedora hipotecaria la suma de $25,000 de principal y la suma de $1,534.94 por concepto de intereses desde el día 18 de junio de 1931 hasta el 18 de febrero de 1932, incluyendo en esta liquidación los intereses del 1 por ciento adicional sobre el plazo anual de $2,000 que venció el 18 de diciembre de 1929, según se estipuló en el contrato privado de prórroga reseñado anteriormente. Se trabó embargo sobre las rentas de los bienes hipotecados en 19 de febrero de 1932 para asegurar la efectividad de la sentencia y se le dió al ejecutivo hipotecario el curso que determina la ley, y en virtud de este procedimiento el día 21 de abril de 1932 le fué adjudicado a Encarnación Aboy Vda. de Cintrón el referido inmueble por la suma de $22,000, la cual fué aplicada a reducir la deuda hipotecaria reclamada, poseyéndolo desde dicha fecha hasta que lo vendiera a la "Municipal Housing Authority of the Capital of Puerto Rico" en 27 de junio de 1940.

F. Rodríguez Hermanos & Compañía instituyó este pleito contra Encarnación Aboy Vda. de Cintrón el día 14 de septiembre de 1943 solicitando la nulidad del referido procedimiento ejecutivo por los fundamentos siguientes:

(1) Porque aparecen incluídos y reclamados en el escrito inicial del ejecutivo hipotecario, intereses adicionales del 1

por ciento sobre el plazo de $2,000 vencido el 18 de diciembre de 1929, los que no estaban hipotecariamente garantizados, ya que fueron convenidos mediante contrato privado, otorgado por las partes.

(2) Porque en la protesta de responsabilidad la ejecutante no se obligó a indemnizar a terceros interesados por los daños y perjuicios que pudieran causárseles como consecuencia del procedimiento del ejecutivo hipotecario.

(3) Porque no se tasó previamente el inmueble objeto del ejecutivo para determinar el precio mínimo en que debería venderse en pública subasta de acuerdo con las disposiciones del artículo 175 del Reglamento de la Ley Hipotecaria, alegando y aplicando erróneamente como fundamento jurídico del escrito inicial la Ley de 9 de marzo de 1905, relativa a la manera de satisfacer las sentencias.

(4) Porque el requerimiento de pago servido a la mercantil aquí demandante en el procedimiento de ejecutivo hipotecario es nulo por cuanto en él se consigna que la cantidad de interés a cobrar a razón del 9 por ciento anual sobre el principal de $25,000, a contar desde el 18 de junio de 1931 hasta el 18 de febrero de 1932, monta a $1,534.94, cuando lo cierto es que estos intereses solamente ascienden a la suma de $1,500, cobrándose, por tanto, $34.94 en exceso de lo debido.

Como consecuencia de la nulidad alegada, reclamó el valor del inmueble hipotecado a la fecha de la toma de posesión del mismo por la demandada, que valora en la suma de $42,278, ya que dicho inmueble no puede ser objeto de devolución por haber sido enajenado a favor de la "Municipal Housing Authority of the Capital of Puerto Rico", más los frutos civiles y rentas producidos por dicho inmueble desde el 19 de febrero de 1932 hasta el 27 de junio de 1940, montantes a $45,100, y en adición a esta suma la cantidad de $550 mensuales por concepto de daños a contar desde el 27 de junio de 1940 hasta la fecha en que la sentencia que pu-

diera recaer en este caso a su favor fuera firme, descontándose las cantidades pagadas por la demandada por concepto de contribuciones territoriales, condenando a la demandada al pago de costas, gastos y honorarios de abogado de esta acción; consintiendo y solicitando además que se dicte sentencia por confesión condenando a la demandante F. Rodríguez Hermanos & Compañía, a pagar a la demandada en este caso Encarnación Aboy Vda. de Cintrón la suma de $25,000 de principal adeudada en virtud de la hipoteca referida, más sus intereses del 9 por ciento anual desde el 18 de junio de 1931 hasta la fecha en que quede firme y ejecutable la sentencia que pudiera recaer en este caso a favor de la demandante mercantil, más el 1 por ciento adicional sobre el plazo anual de $2,000, prorrogado por documento privado, desde la misma fecha y hasta quedar firme la sentencia.

Contra la demanda interpuesta, la demandada radicó su contestación aceptando algunos hechos y negando otros. Alega que el procedimiento ejecutivo hipotecario aludido es válido, que no se ha cometido ningún error fundamental en su tramitación; que las rentas percibidas del inmueble objeto del ejecutivo desde el 1932 al 1940 ascienden a $34,812.39, habiendo pagado durante este tiempo las contribuciones territoriales sobre dicho inmueble; que cuando la demandada tomó posesión del inmueble hipotecado tenía un valor razonable de $25,992.05; y que la demandante no tendría derecho en el caso de anularse el procedimiento ejecutivo a las rentas dejadas de percibir después del 27 de junio de 1940, ya que en dicha fecha la demandada vendió la propiedad hipotecada a la "Municipal Housing Authority of the Capital of Puerto Rico". Como materia nueva constitutiva de defensa también alega la demandada: (1) que en la hipótesis de existir las causas de nulidad alegadas por la parte actora, éstas no serían inconsistentes con la justicia sustancial, y no perjudicarían, ni afectarían en forma alguna, los derechos de las partes en contienda a tenor de lo dispuesto en la Re-

gla 61 de Enjuiciamiento Civil para las cortes de Puerto Rico; (2) que la acción ejercitada por la demandante está prescrita de acuerdo con el art. 1868 del Código Civil (edición de 1930), por haber transcurrido más de un año a contar desde la fecha en que fuera subastada la finca hipotecada y la radicación de la demanda; (3) que la demandante incurrió en "laches", o sea demora indebida e injustificada al tardar alrededor de once años para ejercitar su acción, careciendo, en su consecuencia, de derecho para impugnar la sentencia dictada en el procedimiento ejecutivo sumario; y (4) que habiendo aceptado la demandante en virtud del contrato privado la prórroga que se le hiciera para el pago del plazo hipotecario de los $2,000 vencido el 18 de diciembre de 1929, con la condición de que pagara sobre este plazo interés del 10 por ciento anual hasta su pago definitivo, quedando el inmueble hipotecado respondiendo de este interés adicional de conformidad con el referido contrato, ésta estaba impedida (*estopped*) de ir en contra de sus propios actos alegando como motivo de nulidad del ejecutivo que se incluyera y cobrara como parte de los intereses garantizados con la hipoteca los que adicionalmente se convinieron por tal contrato.

La demandada formuló, además, una reconvención como parte de su contestación en la que alegó: que en el supuesto caso de que el procedimiento ejecutivo sumario fuese nulo, la demandante se encontraría adeudando a la demandada la suma de $25,000 de principal más los intereses convenidos en la escritura original de hipoteca según fuera modificada por la escritura de prórroga y el documento privado a que se ha venido haciendo mención anteriormente, ascendiendo dichos intereses y capital adeudados hasta el 14 de septiembre de 1943 a $52,781.29; que la demandante adeuda además a la demandada la suma de $25,321.02 por concepto de gastos, reparaciones, contribuciones, agua, luz, administración, etc., por el período comprendido entre la fecha en que la

demandada tomó posesión del inmueble hasta el 27 de junio de 1940; y que la demandada recibió frutos y rentas del referido inmueble hasta el 27 de junio de 1940, en la suma total de $34,812.39 y lo vendió por la suma de $30,000, habiendo pagado $1,000 de comisión de venta a Eloy García Cruz y $117.15 por gastos de escritura, y por consiguiente, acreditado a la deuda de la demandante a favor de la demandada por los conceptos antes indicados el importe de dichos frutos y rentas, más la suma de $25,992.05 que representaba el valor en el mercado de la propiedad hipotecada en el año 1932, más los intereses al tipo legal sobre esta última cantidad hasta el 14 de septiembre de 1943, resulta en su consecuencia, que la demandante quedaba adeudando a la demandada la suma de $12,294.31.

Contra la reconvención interpuesta, la demandante alegó: que aceptaba adeudar el importe total de la obligación hipotecaria y sus intereses convenidos; pero negó, por falta de información y suficiente conocimiento, adeudar la de $25,321.02 que reclama la demandada por concepto de reparaciones necesarias, contribuciones, seguros, agua, luz, etc., por el período comprendido desde que la demandada tomó posesión del inmueble hipotecado y subastado hasta el 27 de junio de 1940; y, que la demandada ha percibido o debido percibir por rentas y frutos hasta septiembre de 1943 la suma de $550 mensuales, o sea un total de $76,650, más una suma igual a la antes indicada por cada mes subsiguiente, y que no viene obligada al pago de comisión alguna o gastos de escritura por concepto de la venta de la propiedad a la nombrada agencia municipal por no haber tenido intervención en la misma. Además niega, por falta de información, que la venta de la propiedad se efectuara por el precio de $30,000 y que la demandada tuviera derecho alguno a cobrar interés al tipo legal sobre el supuesto importe del precio de la venta; y, por consiguiente, que la demandante adeudara a la demandada hasta el 14 de septiembre de 1943 la suma de $12,994.31 u otra suma.

Visto el caso, la corte inferior dictó sentencia el día 17 de agosto de 1944 bajo los siguientes pronunciamientos: (1) declarando nulo el procedimiento ejecutivo sumario seguido por doña Encarnación Aboy Vda. de Cintrón contra F. Rodríguez Hermanos & Cía., bajo el número 16,238 de dicha Corte; (2) condenando a la demandada a satisfacer a la demandante las sumas de $32,000, por el valor en el mercado de la propiedad en el año 1932; $38,758.21, por las rentas producidas por la propiedad durante el período comprendido entre abril 22, 1932, y junio 27, 1940; (3) condenando a la demandada a satisfacer a la demandante la suma de $297.35 por las rentas producidas por la propiedad y percibidas por la demandada durante el período comprendido entre febrero 20 y abril 21 de 1932; (4) condenando a la demandada a satisfacer a la demandante la suma de $5,775 por concepto de intereses al tipo legal sobre la cantidad de $30,000 desde el 27 de junio de 1940 al 14 de septiembre de 1943, y (5) condenando a la demandada a pagar a la demandante las costas de este litigio y $400 que se fijan para honorarios de abogado, más los intereses legales sobre la suma de $76,830.56, importe total de la reclamación excluyendo las costas y honorarios de abogado, desde la fecha de esta sentencia y hasta su pago; y (6) condenando a la demandante a satisfacer a la demandada las sumas de $25,000 por el principal del préstamo hipotecario que ésta le hiciera el 18 de diciembre de 1925; $27,781.29 por los intereses sobre dicho préstamo por el período comprendido entre el 18 de junio de 1931 a 14 de septiembre de 1943 a razón del 10 por ciento sobre el plazo hipotecario que venció el 18 de septiembre de 1929 y del 9 por ciento sobre el remanente y $25,331.02 por concepto de gastos de conservación y administración de la propiedad hipotecada durante el período en que estuvo en la posesión de la demandada, en total, $78,112.31, más los intereses legales sobre esta suma desde la fecha de la sentencia hasta su pago.

Alega la demandada que la corte inferior incurrió en error:

1. Al no declarar con lugar la defensa de prescripción.
2. Al no declarar con lugar la defensa de *laches*.
3. Al no declarar con lugar la defensa de *estoppel*.
4. Al no declarar con lugar la defensa de falta de error perjudicial.
5. Al determinar que el valor de la propiedad era $32,000 en el año 1932.
6. Al determinar que las rentas brutas que producía la finca desde el día en que entró en posesión de la propiedad la demandada apelante en 1932 hasta la venta en 1940 ascenderían a $38,758.21, y las rentas netas a $13,427.19.
7. Al conceder a la demandante apelante intereses sobre $30,000 como precio de la venta de la propiedad a la "Municipal Housing Authority".
8. Al conceder a la demandante apelante honorarios de abogado ascendentes a $400.

Sostiene la demandante como fundamentos de su apelación, que la corte incurrió en los siguientes errores:

1. Al condenar a la demandante apelante, a pagar a la demandada apelada la suma de $5,802.27 como gastos necesarios en la conservación de la finca objeto de esta acción.
2. Al determinar que la cantidad que debe pagar la demandada apelada por concepto de rentas y frutos dejados de percibir o que pudiera haber percibido la demandante apelante, es la suma de $38,758.21.
3. Al estimar en la suma de $32,000 el valor del inmueble en la fecha en que la demandante apelante fué privada del mismo.
4. Al condenar a la demandada apelada a pagar a la demandante apelante un interés legal de 6 por ciento sobre la cantidad de $30,000 desde el 27 de junio de 1940 al 14 de septiembre de 1943.
5. Al condenar a la sociedad demandante apelante a pagar a la demandada apelada intereses a razón del 10 por

ciento sobre el plazo hipotecario que venció en 18 de diciembre de 1929 y del 9 por ciento sobre el remanente de $23,000 desde el 27 de junio de 1940 hasta el 14 de septiembre de 1943.

6. Al condenar a la demandada apelada a pagar a la demandante apelante la suma de $297.35 por concepto de daños y perjuicios a consecuencia del embargo ilegal de las rentas que ésta practicara para asegurar la efectividad de la sentencia.

7. Cometió error y abusó de su discreción al conceder solamente la suma de $400 para honorarios de abogado.

Procederemos en primer lugar a considerar las cuestiones planteadas por la demandada y luego las de la demandante.

Empezaremos por considerar las defensas propuestas por la demandada que sean de carácter privilegiado, luego las cuestiones de derecho levantadas por la demandante en relación con la nulidad del procedimiento de ejecutivo hipotecario y, por último, las cuestiones de hecho envueltas en este litigio.

Alega la demandada que la acción de nulidad ejercitada por la demandante está prescrita a tenor de las disposiciones del artículo 1868 del Código Civil (edición de 1930), por haber transcurrido más de un año desde el día 27 de abril de 1932, fecha en que se vendiera en pública subasta el inmueble hipotecado, hasta el 14 de septiembre de 1943, fecha en que se radicara la demanda de este caso.

En los casos de *Román Benítez* v. *Rivera,* 43 D.P.R. 535, *Gutiérrez vda. de Crosas* v. *Longpré,* 44 D.P.R. 667, *Sucesión Trías* v. *Porto Rico Leaf Tobacco Co.,* 50 D.P.R. 91 y *Crespo* v. *Schlüter,* 58 D.P.R. 834, este Tribunal fijó, con vista de la ley, en 15 años el término de prescripción para esta clase de acciones. La prescripción que determina el art. 1868(2) del Código Civil, edición de 1930, es de exclusiva aplicación a las acciones de daños y perjuicios que emanan por razón de la culpa o negligencia a que se refiere el art. 1802 del mismo Código.

Distinguiendo Manresa la culpa y negligencia de que trata el Capítulo II del Título XVI del Libro IV del Código Civil de otras clases de culpa y omisión, dice lo siguiente (Comentarios al Código Civil, Tomo 12, pág. 600-01, edición de 1907):

". . . la única especie de culpa y omisión o negligencia que puede ser y es materia del presente capítulo, es la segunda, o sea la que sin la existencia de una obligación anterior, y sin ningún antecedente contractual, produce un daño o perjuicio que tiene su origen en una acción u omisión culpable sólo civilmente; es decir, que siendo ilícita no revista, sin embargo, los caracteres de un delito o falta por no estar penada por la ley.".

Surge en este caso la acción de daños y perjuicios ejercitada por la demandante como consecuencia de los **preceptos** del párrafo del art. 169 del Reglamento de la Ley Hipotecaria que transcribimos literalmente a continuación (*Pontón* v. *Sucesores de Huertas González,* 42 D.P.R. 529):

"El escrito a que se refiere este artículo, autorizado siempre con firma de letrado, enumerará los hechos y las razones jurídicas determinantes de la certeza, la subsistencia y la exigibilidad del crédito y de la competencia del juzgado; señalará categóricamente las cantidades ciertas cobradas en concepto de intereses o a cuenta del capital de la deuda, expresando también la cuantía líquida de la reclamación que por el solo acto de iniciar el procedimiento contraerá el acreedor, *sujetándose a indemnizar cuantos daños y perjuicios irrogare al deudor o a terceros interesados por malicia o negligencia en la fiel exposición de los hechos y las circunstancias que ha de apreciar el juez para autorizar el procedimiento y para continuarlo."* (Bastardillas nuestras.) (Páginas 873 y 874, Estatutos Revisados de 1941.)

En él caso de *Giménez et al.* v. *Brenes,* 10 D.P.R. 128, 132, este Tribunal resolvió "que el procedimiento sumario para el cobro de hipotecas es el resultado de un contrato entre partes en el que se han convenido las prestaciones y se ha pactado también el medio de hacer efectivo el crédito en caso de incumplimiento, o sea en el de falta de pago por parte del deudor." Es obvio que la malicia o negligencia a que se contrae el art. 169, supra, tiene su origen en una obliga-

ción contractual o por lo menos en su antecedente contractual, pues a no mediar relaciones contractuales entre los litigantes de este caso, jamás hubiera surgido la obligación de la demandada a indemnizar a la demandante como consecuencia de no haberse interpuesto la acción del procedimiento sumario para el cobro de la hipoteca de conformidad con las disposiciones de la Ley Hipotecaria. Véase: *Carmona et al. v. Cuesta*, 20 D.P.R. 229, *Gutiérrez vda. de Crosas v. Longpré*, supra.

La prescripción en el presente caso no puede regularse por las disposiciones del inciso 2 del art. 1868 del Código Civil vigente, que dispone:

"Artículo 1868.—*Acciones que prescriben al año.*
Prescriben por el transcurso de un año:
1. .
2. La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en el artículo 1802 desde que lo supo el agraviado."

El artículo 1802 del Código Civil vigente lee como sigue:

"Artículo 1802.—*Obligación cuando se causa por culpa o negligencia.*—El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."

Dicho artículo 1802 guarda congruencia con el 1042 del mismo Código, que dice así:

"Artículo 1042.—*Cómo nacen las obligaciones.*—Las obligaciones nacen de la ley, de los contratos y cuasi contratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia."

Y el artículo 1046, comprendido en el libro 4 del Código Civil vigente dice textualmente:

"Artículo 1046.—*Derivadas de actos u omisiones no penados por la ley.*—Las (obligaciones) que se deriven de actos u omisiones en que intervenga culpa o negligencia no penadas por la ley, quedarán sometidas a las disposiciones del capítulo II del título XVI de este libro."

Estudiando detenídamente el capítulo 2 del Título XVI del libro 4 del Código Civil, que comprende los artículos 1802 a 1810, ambos inclusive, encontramos que las responsabilidades que los referidos artículos establecen nacen de culpa o negligencia, que sin la existencia de una obligación anterior y sin ningún antecedente contractual producen un daño o perjuicio que tiene su origen en una acción u omisión derivadas de aquella culpa o negligencia. Deducimos de estos mismos artículos que entre los daños y perjuicios y la culpa o negligencia de que se derivan ha de haber una relación inmediata de causa y efecto, y que la indemnización de aquéllos no ha de ser accesoria de otra responsabilidad o efecto de no poder ser exigible cualquier responsabilidad legal o contractual.

No pudiendo en el presente caso la demandante ejercitar la acción que le concede el artículo 280 del Código Civil vigente contra el tenedor y el poseedor del inmueble motivo de la acción de la nulidad del ejecutivo hipotecario por hallarse el mismo en poder de tercera persona, optó, según se desprende de las alegaciones de su demanda, por acogerse a las disposiciones del artículo 38 de la Ley Hipotecaria, que para tal evento previene que ''en todo caso en que la acción resolutoria o rescisoria no pueda dirigirse contra tercero, conforme a lo dispuesto en dicho artículo, *se podrá ejercitar la personal correspondiente para la indemnización de daños y perjuicios por el que los hubiere causado.''* (Subrayado nuestro.) Concuerda con el anterior precepto el contenido del inciso segundo del artículo 1247 del Código Civil vigente.

La acción de daños y perjuicios en el presente caso no tiene el carácter de principal sino de subsidiaria, pues la demandante no está ejercitando su acción real y directa contra la propiedad motivo del litigio y sí la personal en reparación de su derecho lesionado; y como se ve, la acción que ejercita no es la acción para exigir responsabilidad por culpa y negligencia, a que se refiere el inciso 2 del artículo 1868 del Código Civil, y no es por tanto aplicable al presente caso el precepto sobre prescripción por un año, que dicho artículo

establece. Se trata de una acción personal que no tiene señalado término especial de prescripción y que por tanto prescribe a los 15 años con arreglo al artículo 1864 del Código Civil.

No erró la corte inferior al resolver que el término de prescripción para esta clase de acciones es de quince años.

Sostiene la demandada que la acción ejercitada por la demandante debe declararse sin lugar por haber ésta incurrido en demora injustificada, *laches,* en el ejercicio de su acción de nulidad por haber transcurrido alrededor de once años entre su iniciación y la adjudicación de la propiedad hipotecada a la demandada. La defensa de *laches* es una en equidad, peculiar a las cortes de equidad y no tiene aplicación a las acciones en ley. Véase: 30 C.J.S. párrafo 113, pág. 523.

Si aceptáramos la procedencia de la defensa de demora, laches, en caso de la naturaleza del presente, estaríamos dejando sin efecto las disposiciones prescriptivas determinadas en el Código Civil. El Tribunal Supremo de España en sentencia que dictara en 18 de abril de 1902 (Jurisprudencia Civil, tomo 93, pág. 636) resolvió lo siguiente: "La demora en las reclamaciones no lleva consigo la disminución de derechos, si no transcurre el tiempo preciso para que se extingan por prescripción." Igual doctrina ha sido sentada por este Tribunal en los casos de *Alcaide* v. *Morales,* 28 D.P.R. 278, 292 y *Román* v. *Sucesión Domich,* 38 D.P.R. 406, 412, en los cuales se declaró que la defensa de demora injustificada o *"incuria laches"* es improcedente cuando la acción que se ejercita no ha prescrito al tiempo de ser iniciada. Este Tribunal discute ampliamente la cuestión de *laches* en relación con la prescripción en el caso de *Serrano* v. *Talavera et als.,* 65 D.P.R. 438, en el que por voz del Juez Asociado Sr. De Jesús se expresó así:

"La acción de *accounting* en el Derecho Angloamericano es de equidad, y siendo la defensa de *laches* una doctrina de equidad, es

de aplicación en las acciones de *accounting* bajo el Derecho Angloamericano. Pero aún bajo ese mismo Derecho la doctrina de *laches* no es de aplicación en acciones en ley donde exista un término de prescripción. *United States* v. *Mack*, 295 U.S. 480, 489 (1935); *Transbel Inv. Co.* v. *Scott*, 26 A.2d 205 (Pa. 1942).

"Independientemente de que la evidencia en este caso fuese o no suficiente para dar lugar a la aplicación de la doctrina de *laches* en una acción de *accounting* en una corte de equidad, la doctrina de *laches* no es aplicable en el presente caso. En esta jurisdicción la acción de rendición de cuentas no tiene su origen en la Jurisprudencia de Equidad. Por el contrario, está regulada por nuestro Código Civil que a su vez la tomó del Código Civil Español. De conformidad con el art. 1861 del Código Civil, las acciones prescriben por el mero lapso de tiempo fijado por la ley, y como ha resuelto el Tribunal Supremo de Cuba en su *Sentencia Núm. 163 de 5 de noviembre de 1931,* el que alega la prescripción extintiva *no debe probar otra cosa* que el decurso del tiempo. Por consiguiente ninguna circunstancia acorta el término de prescripción fijado por la ley.

"Aceptamos que en esta jurisdicción se ha aplicado distintas veces la doctrina de *laches,* pero ha sido siempre en relación con remedios extraordinarios adoptados del Derecho Angloamericano."

Los casos de *Montes* v. *Domenech*, 48 D.P.R. 269, y *Urdaz* v. *Padín,* 48 D.P.R. 306, no son de aplicación en el presente por ser de naturaleza equitativa. No se ha cometido el error alegado.

◼◼ Sostiene la demandada que la corte erró al no declarar con lugar la defensa de *estoppel* porque bajo las circunstancias del presente caso permitió a la demandante alegar y sostener que el documento privado de prórroga, supra, no tenía la efectividad exigida por los requisitos del procedimiento sumario. Este contrato de prórroga no constando en escritura pública, nunca fué inscrito; por lo tanto, el interés adicional del 1 por ciento anual convenido por las partes contratantes no quedó cubierto por la garantía hipotecaria. Véase: Art. 146 Ley Hipotecaria y 1758 y 1776 del Código Civil, edición de 1911; *Fernández* v. *Roig*, 2 S.P.R. 46, 50; *Tesorero* v. *Registrador*, 2 S.P.R. 598, 601. No obstante esto, la demandada, para sostener su defensa de

*estoppel* alega: (1) que fué la intención de la demandante apelante, y así lo representó, que el convenio privado modificara la hipoteca, habiendo recibido y aceptado todos los beneficios correspondientes bajo dicho convenio; (2) que fué la intención y esperanza de la demandante y apelante que la demandada y apelante confiaría en la efectividad del convenio privado como modificación de la hipoteca, y efectivamente ésta así lo confió; y (3) que el permitir ahora a la demandante y apelante demostrar que el convenio privado no tiene efectividad habría de traer a la demandada y apelante graves perjuicios.

Para la determinación de la cuestión legal levantada por la demandada, nos remitimos a los autos del caso. Luego de un detenido y minucioso estudio de los referidos autos, podemos afirmar que la demandante jamás ha impugnado la validez y exigibilidad del citado contrato privado de prórroga de hipoteca. Solamente se ha limitado a impugnar el procedimiento sumario a que fuera sometida para el cobro de tales intereses de conformidad con el derecho que le concede el artículo 175 del Reglamento de la Ley Hipotecaria, derecho que no ha renunciado y que puede reclamar dentro del término de quince años según se ha dejado resuelto en este caso. Los intereses adicionales sobre el indicado plazo de $2,000, constituyen un crédito personal y escriturario a favor de la demandada contra los deudores hipotecarios (*Fernández* v. *Roig,* supra), y, por lo tanto, la demandada no podía recurrir al procedimiento sumario de ejecutivo hipotecario sino a la acción ordinaria. Véanse artículos 128 al 133 de la Ley Hipotecaria y 168 al 176 del Reglamento; *Figueroa* v. *Boneta,* 58 D.P.R. 811.

Además, debemos notar que la acreedora no estaba obligada a recurrir al procedimiento sumario de la Ley Hipotecaria para el cobro de su crédito. Bien pudo instar la acción ordinaria y por consiguiente no puede decirse que al suscribir el contrato privado de prórroga, el deudor estuviera en *estoppel,* pues ni directa ni indirectamente indujo a la

acreedora a recurrir a ese procedimiento especial y si ella lo hizo, actuó a su riesgo.

Por los fundamentos expresados, opinamos que no existe el error alegado.

■■ Sostiene la demandada que "la corte inferior incurrió en error al no declarar con lugar la defensa de falta de error perjudicial", fundándose en que el error cometido en la tramitación del procedimiento ejecutivo sumario no justifica la anulación de dicho procedimiento. Descansa su defensa en los preceptos de la Regla 61 de Enjuiciamiento Civil que en su parte pertinente lee como sigue:

"Ningún error en la admisión o exclusión de evidencia y ningún error o defecto en cualquier decisión u orden, o en cualquier acto realizado u omitido por la corte o por cualquiera de las partes, dará lugar a la concesión de un nuevo juicio, o a dejar sin efecto, modificar, o de otro modo alterar una sentencia u orden, a menos que la corte considere que la negativa a tomar tal acción sea inconsistente con la justicia substancial. En el curso de todo el procedimiento la corte deberá hacer caso omiso de cualquier error o defecto en el mismo que no afecte los derechos substanciales de las partes."

Es incuestionable que la Regla antes transcrita no es de aplicación al procedimiento de ejecutivo hipotecario sumario, ya que la Regla 81 de Enjuiciamiento Civil en su inciso (a) dispone: "Estas reglas serán aplicables a todas las acciones civiles ordinarias y a todos los casos de *mandamus, injunction,* interdictos para retener o recobrar la posesión, tercerías, reclamaciones del derecho de hogar seguro." Todo lo que no está expresamente incluído en esta regla ha quedado tácitamente excluído de los efectos de las Reglas de Enjuiciamiento Civil.

Ha sido doctrina constante de este tribunal la de que en el procedimiento ejecutivo sumario cualquier cantidad que se cobre sin haber sido hipotecariamente garantizada, vicia de nulidad el procedimiento. *Santos* v. *Crédito y Ahorro Ponceño,* 41 D.P.R. 946; *Martorell* v. *Crédito y Ahorro Ponceño,* 42 D.P.R. 655; *Vázquez vda. de McCormick* v. *Gutié-*

*rrez,* 52 D.P.R. 170; *Figueroa* v. *Boneta,* 58 D.P.R. 811; *Marcia Torres* v. *Fernández Méndez* y *Luis G. Hernández,* 65 D.P.R. 622.

No podemos perder de vista que el procedimiento ejecutivo sumario es prácticamente uno *ex-parte* por cuya razón al hacerse uso de él todos los requisitos y condiciones precedentes y concomitantes a su ejercicio deben ser observados estricta y rigurosamente. *Ojeda* v. *Registrador,* 39 D.P.R. 239; *Martorell* v. *Crédito y Ahorro Ponceño,* supra; *Figueroa* v. *Boneta,* supra. . Especialmente si consideramos que la orden de requerimiento de pago equivale a una sentencia exigiendo el pago de la misma dentro del término de treinta días sin la celebración de juicio. *Porto Rico Leaf Tobacco Co.* v. *Aldrey,* 13 D.P.R. 234, 241; *Perales* v. *Corte,* 43 D.P.R. 902 y *Vázquez vda. de McCormick* v. *Gutiérrez,* supra.

Por los motivos que dejamos expresados, entendemos que la violación de los preceptos legales que regulan el **referido** procedimiento constituyen un error substancial que afecta los derechos de la deudora, ya que en virtud del procedimiento sumario se cobraron intereses que no están hipotecariamente garantizados.

■■ Alega la demandada que la corte inferior erró al valorar la propiedad hipotecada en $32,000 en el año 1932, por entender que el valor justo y real para esa época era de $25,992.05, cantidad que habida consideración de la sentencia anulando el ejecutivo hipotecario sumario debería devolver a la demandante como precio de la propiedad hipotecada, ya que se encuentra imposibilitada de devolver la misma por haberla enajenado en favor de la "Municipal Housing Authority of the Capital of Puerto Rico" en el año 1940. También, la demandante en su tercer señalamiento de error contra la sentencia dictada por la corte inferior sostiene que la corte erró al estimar en $32,000 el valor del inmueble en el año 1932, o sea la fecha en que fuera privada

del mismo, pero no determina cuál era su valor para esa época y se concreta en su argumentación a discutir que tenía derecho a que la corte le concediera el montante del valor en mercado que tenía la referida propiedad en 1940 cuando fuera enajenada, estimando su justo valor en $39,000 para esa fecha, fundándose en que siendo el procedimiento de ejecutivo sumario nulo, la demandante nunca dejó de ser dueña de la propiedad hipotecada hasta que fuera vendida en 1940. Como ambos errores están íntimamente relacionados, vamos a discutirlos conjuntamente.

La cuestión fundamental en este caso, según las alegaciones y la prueba aducida, ha girado sobre el precio en el mercado del inmueble hipotecado a la fecha en que fuera adjudicado a la demandada, o sea el 21 de abril de 1932, y no hubo contención ni la demandante presentó prueba en cuanto al valor del inmueble en el 1940. Existe una marcada inconsistencia por parte de la demandante entre sus alegaciones, prueba para sostener éstas, y su alegato, donde por vez primera levanta la cuestión de que el precio que debe recuperar con motivo de habérsele privado ilegalmente de su propiedad es el que tenía en el mercado en el 1940. Este Tribunal no puede entrar a considerar en grado de apelación la cuestión ahora levantada, ya que ésta no fué sometida a la consideración de la corte inferior.

La contienda levantada en la corte inferior giró alrededor del valor de la propiedad en el año 1932. La prueba en cuanto a ese extremo fué completamente contradictoria, pero la corte inferior dirimió el conflicto resolviendo que el valor en mercado de la referida propiedad en 1932 era de $32,000, y no habiéndose demostrado que cometiera manifiesto error en la apreciación de la prueba ni que actuara movida por pasión, prejuicio o parcialidad, debe sostenerse su dictamen.

Alega la demandada que la corte inferior erró al determinar que las rentas brutas producidas por la finca desde el día en que entrara en posesión de la propiedad en el año

1932 hasta que las vendiera en 1940 ascendían a $38,758.21 y las rentas netas a $13,427.19. Asimismo la demandante alega en el segundo señalamiento de errores que la corte erró al determinar que la cantidad que debe pagar la demandada apelada por concepto de rentas y frutos dejados de percibir o que pudiera haber percibido la demandante apelante montara a la suma de $38,758.21. Ambas partes imputan la comisión del mismo error, aunque por distintos motivos y por ello vamos a discutirlos conjuntamente.

La demandada sostiene que la renta bruta que produjera la propiedad hipotecada durante el término de ocho años que estuvo bajo su posesión ascendió a la suma de $38,293.63, y no a la suma de $38,758.21 que la corte determinara, porque se probó que la cantidad de $34,812.39 era equivalente a lo cobrado por concepto de rentas desde abril de 1932 hasta junio 27 de 1940 después de deducido el 10 por ciento de comisión correspondiente al cobrador García Cruz. Si el importe total de la renta bruta menos el 10 por ciento pagado al cobrador montaba a $34,812.39 según dictaminara la corte inferior, resalta a la vista que el 100 por ciento de la renta bruta debería ascender a la suma de $38,680.43. Debe corregirse este error de números en la sentencia dictada. Alega además que entre los gastos de administración y conservación de la propiedad aceptados como probados por la corte, montantes a $25,331.02 no aparece incluído el 10 por ciento de la renta bruta pagado al cobrador por concepto de comisión. La demandante alega en contrario que en la partida de $5,802.27 señalada como gastos de administración está incluída la comisión del 10 por ciento pagada al cobrador. También alega que la renta bruta producida y debida producir por el inmueble debía ascender a la suma de $48,000. En realidad no podemos asegurar con certeza si la comisión del 10 por ciento antes aludida se incluyó o no en los gastos de conservación y administración de la propiedad, pero la corte determinó cuáles eran los gastos deducibles de la renta bruta según se expresa a continuación:

| | |
|---|---:|
| Contribuciones | $8, 027. 49 |
| Primas de seguros | 1, 602. 21 |
| Reparaciones | 5, 208..62 |
| Agua | 3, 455. 61 |
| Luz | 138. 83 |
| Peón para la limpieza | 432. 00 |
| Derechos de instalación eléctrica | 2. 00 |
| Plomería | 588. 00 |
| Derechos de pago de tubería de desagüe por terrenos de la American Railroad Co. | 24. 00 |
| Costas para fondo seguro del estado | 51. 99 |
| Gastos de administración | 5, 802. 27 |
| Total | $25, 331. 02 (*sic*) |

No cabe duda alguna que los gastos que aprobó la corte por concepto de conservación y administración de la propiedad son los anteriormente relacionados, siendo inmaterial para los efectos del caso si la partida de gastos por comisión de cobranza de las rentas está o no incluída en los gastos de administración.

Determinado que los gastos de administración montan a la suma de $25,331.02, de la renta bruta ascendiente a $38,680.43, queda entonces una renta neta de $13,349.41.

Como en el error señalado por ambas partes existe divergencia de criterio en cuanto al importe total de la renta bruta que ha debido producir el inmueble, así como en cuanto a la renta neta, siendo la prueba aducida por las partes contradictoria, y resuelto el conflicto de la prueba por la corte inferior en favor de la demandada sin que se haya probado que al así ejercitar su discreción cometiera manifiesto error o actuase movida por pasión, prejuicio o parcialidad, entendemos que no se ha cometido el error alegado.

Sostiene la demandada que la corte inferior erró al conceder a la demandante apelante interés legal sobre la suma de $30,000 en que vendiera la propiedad, a contar desde el 27 de junio de 1940 al 14 de septiembre de 1943, porque cuando ella vendió la propiedad en $30,000 pagó $1,000 de

comisión de venta y $117.15 por concepto de documentación y otros gastos, por lo cual pide se deduzcan los gastos mencionados del precio de venta antes de computarle el montante de los intereses al 6 por ciento anual a que tiene derecho la demandante.

Opinamos que la demandada no tiene derecho a resarcirse por no ser los mismos gastos de administración y conservación del inmueble vendido.

También alega la demandante en su cuarto señalamiento que la corte erró al condenar a la demandada a pagarle el interés legal del 6 por ciento anual sobre la suma de $30,000, precio de la finca vendida, a contar desde el 27 de junio de 1940 hasta el 14 de septiembre de 1943, fundándose para ello en que tiene derecho no a los intereses legales antes indicados y sí a una indemnización igual a las rentas que hubiera podido percibir la demandada si no la hubiera vendido. Como este error está relacionado con el séptimo de la demandada, lo discutimos aquí.

Se probó que la demandada estuvo en posesión de la propiedad desde el 21 de abril de 1932 hasta junio 27 de 1940, fecha en que se traspasó en venta a la Autoridad de Hogares de la Capital por el precio de $30,000.

La indemnización de daños y perjuicios en este caso comprende, no sólo el valor de la pérdida que haya sufrido sino también el de la ganancia que haya dejado de obtener el acreedor, y como la demandada debe ser reputada como una poseedora de mala fe (art. 363 C.C., edición de 1930), ella viene obligada a abonar los frutos percibidos y los que el poseedor legítimo hubiera podido percibir (art. 384 C.C., edición de 1930) después de deducidos los gastos necesarios para la conservación de la cosa. Véase *Capó* v. *Hartman & Cía.*, 57 D.P.R. 196, 205. No se probó que la demandada percibiera rentas con posterioridad al 27 de junio de 1940, fecha en que la propiedad fuera vendida a la Autoridad antes nombrada, la que destruyó las edificaciones que existían para

levantar sobre el solar nuevas construcciones, por lo que la demandada no puede ser condenada a pagar rentas o frutos que no percibió ni se produjeron. *Lokpez* v. *Fernández,* 61 D.P.R. 522, 552. No existen los errores alegados por las partes contendientes.

■ Alega la demandada que la corte erró al conceder a la demandante apelante honorarios de abogado ascendientes a $400 fundándose en que no fué temeraria al defenderse de la acción ejercitada por la demandante en su contra. También la demandante sostiene en su séptimo señalamiento de error que la corte erró y abusó de su discreción al concederle solamente la suma de $400 para honorarios de abogado, ya que entiende que tales honorarios importan la suma de $5,000. Tomando en consideración todas las circunstancias concurrentes en este caso, somos de opinión que la corte no abusó de su discreción judicial al conceder a la demandante solamente la suma de $400 por concepto de honorarios de abogado.

■ Alega la demandante en su quinto señalamiento que la corte erró al condenarle a pagar a la demandada intereses a razón del 10 por ciento anual sobre el plazo hipotecario que venció el 18 de diciembre de 1929 y del 9 por ciento anual sobre el remanente de $23,000 desde el 27 de junio de 1940 hasta el 14 de septiembre de 1943. Declarada la nulidad del procedimiento de ejecutivo sumario, queda subsistente el crédito hipotecario y, por consiguiente, la demandante viene obligada a satisfacer los intereses sobre el mismo desde el 18 de junio de 1931 a razón del 10 por ciento anual sobre el plazo de $2,000 que venció en 18 de diciembre de 1929 y del 9 por ciento anual del remanente hasta el 14 de septiembre de 1943. No erró la corte.

■ Y, por último, la demandante imputa a la corte inferior haber errado al condenar a la demandada a pagar a la demandante la suma de $297.35 por concepto de daños y perjuicios a consecuencia del embargo ilegal de las rentas que

ésta practicara para asegurar la efectividad de la sentencia, alegando que tiene derecho a que le concedan la cantidad que debió percibir por rentas de las casas montantes a $1,000 y no lo que el Colector cobrara. La única evidencia presentada demuestra que el producto líquido de los frutos percibidos durante el período a que se refiere el embargo era de $297.35. No existe el error alegado. Véase *Lokpez* v. *Fernández*, supra.

*Por las razones expuestas se modifica la sentencia en cuanto a la cuantía de la renta bruta de conformidad con los términos de esta opinión y, así modificada, se confirma.*

El Juez Asociado Sr. Córdova se inhibió.